UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 00-419 (DSD/JMM)

Allen Glenn and Walter Linwood Anderson III, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

**ORDER**

Daddy Rocks, Inc.,

Defendant.

Douglas A. Hedin, Esq., Daniel S. Goldberg, Esq., Elizabeth Glidden, Esq. and Hedin & Goldberg, 2100 Stevens Avenue South, Minneapolis, MN 55404, counsel for plaintiffs.

Marshall H. Tanick, Esq., Vincent J. Ella, Esq. and Mansfield, Tanick & Cohen, 1560 International Center, 900 Second Avenue South, Minneapolis, MN 55402, counsel for defendants.

This matter is before the court on plaintiffs' motion for class certification and plaintiffs' motion to strike the affidavit of Brian Homme. Based on a review of the file, record, and proceedings herein, and for the reasons stated, the court denies plaintiffs' motions.

FILED MAR 27 2001
FRANCIS E. DOSAL, CLERK
Judgment Ent'd. ______
Deputy Clerk's Initials ______

**BACKGROUND**

Plaintiffs Allen Glenn and Walter Linwood Anderson bring this action on behalf of themselves and other similarly situated African American men alleging that they were denied entrance to Daddy Rocks, Inc., a Minneapolis nightclub, because of their race. Specifically, plaintiffs claim that Daddy Rocks applied its dress code in a discriminatory manner against African American men, in violation of federal and state civil rights laws.

Daddy Rocks opened for business in February 1999, in a refurbished building in the warehouse district of downtown Minneapolis. It serves alcohol and light refreshments, but its main attraction is dancing. It caters primarily to post-college people and young professionals in the 21-35 age group. In order to "maintain high standards to attract the type of upscale crowd sought by the facility" and ensure patron safety, Daddy Rocks enforces a dress code. The dress code restricts untucked shirts, athletic attire, hats (except for golf and baseball caps with bills worn forward), baggy, unclean or torn clothing and ornate jewelry such as long-chained and dangling necklaces. (Homme dep. pp 82-96, Homme Aff. Exh. 1, 2). Plaintiffs allege that the policy was not posted during the summer of 1999, however Daddy Rocks maintains that a handwritten version of the policy was "sometimes" posted by the entrance so that new bouncers could refer to it if questions arose. (Homme dep. pp. 48-49). The policy was later typed up and

is now posted at the entrance where customers can see it. (Homme dep. pp. 52-53).

Plaintiffs claim that Daddy Rocks trains its bouncers to apply its dress code in a subjective manner with the goal of excluding African Americans from the nightclub. According to former bouncer Richard Roback, he was instructed by club owner Brian Homme and club manager Nick Bauer on his first day of work that he should not let "n-----s" into Daddy Rocks. (Roback Aff. ¶ 3). Former bouncer Larry Burns, who quit his position at Daddy Rocks after his first day, asserts that Bauer used racial slurs in his presence and told him to look for any reason to exclude African American men from Daddy Rocks. (Burns Aff. ¶¶ 5-8).

In July 1999, plaintiff Glenn, a 30-year old African American man, attempted to enter Daddy Rocks with his wife and another couple. Glenn was the only African American in the group. The bouncer at the door told Glenn that he could not enter because he wore open-toed shoes. Moments later, Glenn observed four Caucasian men wearing t-shirts, shorts and sandals enter the nightclub without comment from the bouncer. (Glenn dep. pp. 18, 21-23). Later that same evening, Glenn walked past the nightclub's outdoor patio and observed other Caucasian men and women wearing shorts and sandals. (Glenn dep. p. 28).

In August or September of 1999, Glenn and another African American man attempted to enter Daddy Rocks but were denied

entrance allegedly because they wore baseball caps. (Glenn dep. pp. 34-35). According to the posted dress code, baseball caps are allowed provided that the caps are directed forward. (Glidden Aff. Exh. 15).

Also in August or September of 1999, plaintiff Anderson, a 32-year old African American man, tried to enter Daddy Rocks with a group of several men and women. The bouncer told him he could not enter because he wore a sleeveless vest. Anderson walked across the street and purchased and put on a t-shirt under his vest and again attempted to enter the nightclub. He was permitted to enter, at which time he observed several white men and women wearing tank tops and other sleeveless shirts. (Anderson dep. pp. 40-48; Brusehaver Aff. ¶¶ 4-5).

In late October or early November 1999, Anderson attempted to enter Daddy Rocks as the only African American male in a small group of people. When he approached the door, the bouncer told him he could not enter because he wore a necklace. When a white female friend of Anderson who was a "regular" at Daddy Rocks asked why he could not enter, a second bouncer told Anderson he could enter if he tucked his necklace inside his shirt. Upon entrance, Anderson observed several white men who wore necklaces that were not tucked inside their shirts. (Anderson dep. pp. 48-52).

Other African American men have reported similar experiences at Daddy Rocks. In late 1999, three men filed charges of

discrimination against Daddy Rocks with the Minneapolis Department of Civil Rights, and another man filed a similar charge with the Minnesota Department of Human Rights. (Glidden Aff. Exh. 13, 14). In February 2000, a local television station aired a special investigative report on the alleged discriminatory practices of the nightclub. The segment featured paired Caucasian and African American test customers who were subjected to differential treatment despite their similar attire. Following the broadcast, ten additional men came forward to file charges with the Minneapolis Department of Civil Rights. (Glidden Aff. Exh. 13; Homme Aff. Exh. 13). Six other men who have been denied entrance to the nightclub for allegedly discriminatory reasons have been identified in early discovery, bringing the total potential pool of claimants to 22.

Based on this evidence, plaintiffs seek certification of a class consisting of "African American men who have been refused entrance to Daddy Rocks because of their race." (Amended complaint ¶ 6).

**DISCUSSION**

**I. Motion to Strike**

Plaintiffs move to strike the affidavit of Brian Homme, the owner and chief financial officer of Daddy Rocks, asserting that Homme's affidavit is replete with hearsay, unsupported conclusions,

speculations and statements lacking in personal knowledge. As the court indicated at the hearing on this matter, the motion is denied however the court will disregard those assertions which do not satisfy the requirements of Fed. R. Civ. P. 56.

**II. Motion for Class Certification**

Under Rule 23(a), plaintiff must establish four threshold requirements for class certification:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). If plaintiff satisfies the prerequisites of Rule 23(a), he must then establish that his action on behalf of the class falls within one of the three categories listed in Fed. R. Civ. P. 23(b).[1] The court may only certify the class if satisfied,

---

[1] Plaintiffs assert that their proposed class satisfies Rule 23(b)(2), which provides that a class action is maintainable if:

> the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

Fed. R. Civ. P. 23(b)(2).

In the alternative, plaintiffs claim that:

> the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other

(continued...)

after a rigorous analysis, that plaintiff has met the prerequisites of Rule 23. See General Tel. Co. v. Falcon, 457 U.S. 147, 161 (1982). The court's determination is based on the facts and circumstances of each individual case, "and must depend upon a careful balance between the convenience of maintaining a class action and the need to guarantee adequate representation to the class members." Wright v. Stone Container Corp., 524 F.2d 1058, 1061 (8th Cir. 1975). In this case, the court concludes that certification is not warranted because plaintiffs have failed to satisfy the requirements of Rule 23(a). In addition, their proposed class cannot be maintained under Rule 23(b).

**A. Rule 23(a) Requirements**

**1. Numerosity**

To satisfy the numerosity requirement of Rule 23(a), plaintiffs must show that the number of individuals composing the potential class be so numerous that joinder of all members is impracticable. See Fed. R. Civ. P. 23(a). No arbitrary or rigid rules regarding the required size of a class have been established by the courts, and what constitutes impracticability depends upon the facts of each case. See Boyd v. Ozark Air Lines, Inc., 568 F.2d 50, 54 (8th Cir. 1977). Practicality of joinder depends on

---

[1](...continued)
available methods for the fair and efficient adjudication of the controversy.

Fed. R. Civ. P. 23(b)(3).

such factors as the size of the class, the ease of identifying its members and determining their addresses, the facility of making service on them if joined, their geographic dispersion and whether the size of the individual claims is so small as to inhibit individuals from separately pursuing their own claims. See Paxton v. Union Nat'l Bank, 688 F.2d 552, 559-60 (8th Cir. 1982), cert. denied, 460 U.S. 1083 (1983) (citing C. Wright & A. Miller, *Federal Practice and Procedure* § 1762).

In their amended complaint, plaintiffs asserted a class size of more than 50 individuals. (Amended complaint, ¶ 6(a)(1)). By the time this motion was briefed, the estimate had grown to anywhere from 100 people to "several multiples of that" to as high as 2000 or more black "exclusionees." (Pltf. Brief, pp. 9, 11). Plaintiffs rely on the testimony of former bouncer Brian Roback, who believes he personally denied entrance to more than 50 African American men and observed that approximately 20-25 African American men were denied entrance by all bouncers every Friday and Saturday night. (Roback Aff. ¶¶ 2-6). However, the changing estimates of class size suggest that plaintiffs have engaged in considerable speculation, which is insufficient to satisfy the numerosity requirement for class certification. See Schermer Trust v. Sun Equities Corp., 116 F.R.D. 332, 336 (D. Minn. 1987).

Further, the court notes that the televised report on the nightclub's alleged discriminatory practices was aired at the end

of the popular February "sweeps" rating period, yet since that broadcast, a total of only sixteen potential class members have come forward with claims of racial discrimination. The names of six other potential claimants have been culled from various sources, but defendant keeps no records of any prospective patrons who were denied entrance to the bar therefore it is unlikely that further discovery will reveal additional claimants. On these facts, the court cannot conclude that plaintiffs have satisfied the numerosity requirement.

Further, judging by the complaints lodged with state and local administrative agencies, all prospective class members reside in the Twin Cities metropolitan area. This is not surprising, given that Daddy Rocks operates at only one location, in Minneapolis. There is no reason to believe that the scope of the injured class would extend beyond this geographical area and render joinder impracticable. Cf. Hewlett v. Premier Salons Int'l, Inc., 185 F.R.D. 211, 215 (D. Md. 1997) (certifying class of African Americans who had been refused service at defendant's hair salons, which were located in all 50 states).

**2. Commonality and Typicality**

Plaintiffs have also failed to meet their burden to establish that the class claims share common questions of law or fact and that plaintiffs' claims are typical of the claims of the putative class. The United States Supreme Court has commented that "[t]he

commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." General Tel., 457 U.S. at 158 n.13. Any discussion of the commonality of the class members' claims, therefore, is related to an analysis of whether the class representative's claim is typical of the class he seeks to represent.

After a careful review of the record, the court concludes that the individualized nature of the claims in this case precludes class certification. Each alleged incident of racial discrimination will require a case-specific inquiry, addressing such facts as type of attire at issue, the identity of the bouncer, the nature of the bouncer's request and plaintiff's response. Plaintiffs' own experiences suggest that apart from the unifying allegation of discriminatory intent, little else is common or typical. For example, Glenn testified that on one attempt to enter the bar, he was turned away for wearing open-toed sandals. When he observed that four white men were allowed into the bar wearing sandals and t-shirts, he complained to the bouncer. The bouncer changed his mind and gave Glenn the opportunity to enter, which he declined. (Glenn dep. pp. 25-26). During a different visit to the

nightclub, when the bouncer told him he could not enter wearing a baseball cap, he walked away. (Glenn dep. pp. 35-36). In a third incident, two bouncers approached Glenn and told him that he could not enter the bar unless he took his hat off. He immediately complied and was allowed in. (Glenn dep. pp 63-64).

A review of the administrative charges of discrimination reveals the same variety of circumstances. One complainant asked why he was denied entrance, but the bouncer refused to answer and said that if complainant did not leave, he would call the police. (Glidden Aff., Exh. 13, Roberts charge). Another complainant reported that he was initially admitted after agreeing to tuck in a gold chain but was later approached by four bouncers who asked him to leave because his gold chain was showing. (Id., Jones charge). A third complainant reported that he was denied entrance because he was wearing baggy pants. When an unidentified female confronted the bouncers to complain that four white males with similar pants were allowed in, she too was asked to leave and the bouncer sprayed complainant in the eyes with pepper spray and called the police. (Id., Brown charge).

Individual class members need not be "identically situated" to meet the commonality requirement. Paxton, 688 F.2d at 561. However, the unifying question of law presented by this putative class cannot alone establish commonality where the underlying circumstances vary to this degree and the decision-making is this

idiosyncratic and unpredictable. For these same reasons, the court must conclude that plaintiffs' claims are not typical of the claims presented by the rest of the proposed class. See Allen v. City of Chicago, 828 F. Supp. 543, 552 (N.D. Ill. 1993) (finding that plaintiffs had failed to establish both commonality and typicality where plaintiffs had not set forth sufficient facts of a single discriminatory policy or practice of general application and would prevail only upon an individualized showing of racial discrimination).[2]

Based on plaintiffs inability to satisfy the requirements of Rule 23(a), the court must deny plaintiffs' motion for class certification.

**B. Rule 23(b) Requirements**

Even if plaintiffs had met their burden under Rule 23(a), plaintiffs cannot establish that this action falls within the ambit of either Fed. R. Civ. P. 23(b)(2) or 23(b)(3).

---

[2] The final element of Rule 23(a) requires a finding that the class representative will fairly and adequately protect the interests of the class. The court notes that both Glenn and Anderson have indicated that they have no desire to go back to the facility. (Anderson dep. p. 179; Glenn dep. pp. 140-42). The court agrees with defendant that this could theoretically impact plaintiffs' ability to vigorously pursue injunctive relief and possibly raise an issue with respect to standing. However, the court believes that plaintiffs' counsel and the named representatives will competently prosecute this case, therefore plaintiffs have satisfied this final element. See In re Wirebound Boxes Antitrust Litigation, 128 F.R.D. 268, 270 (D. Minn. 1989) (citing Bogosian v. Gulf Oil Corp., 561 F.2d 434, 449 (3rd Cir. 1977), cert. denied, 434 U.S. 1086 (1978)).

An action is maintainable under Rule 23(b)(2) when the plaintiff alleges that the defendant has "acted or refused to act on grounds generally applicable to the class," thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole. Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 614 (1997). Civil rights cases against parties charged with unlawful, class-based discrimination are prime examples of claims which may satisfy Rule 23(b)(2). Amchem, 521 U.S. at 614. However, certification under Rule 23(b)(2) is precluded where monetary relief is sought, unless such monetary relief is incidental to the requested injunctive or declaratory relief. See Paxton, 688 F.2d at 562; see also Jefferson v. Ingersoll, 195 F.3d 895, 898 (7th Cir. 1999)("When substantial damages have been sought, the most appropriate approach is that of Rule 23(b)(3), because it allows notice and an opportunity to opt out.")

In this case, plaintiffs are seeking compensatory and punitive damages in addition to injunctive and declaratory relief. They assert that the request for monetary relief is secondary, but as previously noted, the named representatives have indicated that they have no desire to return to the nightclub. Moreover, much of what the class might hope to obtain in the way of injunctive relief has already occurred. The dress policy has been posted in the entrance to the club and is available to patrons who request it.

(Homme dep. pp. 52-53). According to the Minnesota Department of Human Rights, employees have been instructed to apply the policies in a nondiscriminatory fashion and to report any discriminatory treatment. (Homme Aff. Exh. 9). In addition, all employees have signed a statement that they are aware of the club's policy against the use of racially derogatory terms and a bouncer who was heard uttering racial epithets has been fired. (Homme dep. pp. 62-66). On this record, the court is unable to conclude that injunctive relief is plaintiffs' primary goal, therefore certification under Rule 23(b)(2) is precluded.

Certification under Rule 23(b)(3) is equally improper in this case. To qualify for certification under Rule 23(b)(3), a class must meet two requirements beyond the Rule 23(a) prerequisites: (1) common questions must predominate over any questions affecting only individual members; and (2) class resolution must be superior to other available methods for the fair and efficient adjudication of the controversy. See Amchem, 521 U.S. at 615.

A claim will satisfy the predominance requirement "when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position." In re Potash, 159 F.R.D. at 693. As discussed above, plaintiffs' contention that the nightclub applies its dress code in a racially discriminatory manner does not eliminate the need to analyze the

facts and circumstances of each encounter. The trier of fact in this case will have to assess a variety of factors before a liability determination can be made, including type of dress at issue, bouncer identity, bouncer response and plaintiff's efforts to comply. The need for this type of individualized inquiry renders the case inappropriate for certification under Rule 23(b)(3). See Rutstein v. Avis Rent-A-Car Sys., Inc., 211 F.3d 1228 (11th Cir. 2000)(denying class certification under 23(b)(3) because the question of whether defendant maintains a policy or practice of discrimination cannot establish intentional discrimination against every member of the putative class); see also Jackson v. Motel 6 Multipurpose, Inc., 130 F.3d 999 (11th Cir. 1997) (denying class certification of class of customers and employees where the requisite inquiry into a long list of case specific circumstances would "clearly [predominate] over the only issue arguably common to the class - whether Motel 6 has a practice or policy of racial discrimination.")

Finally, the type of compensatory damages sought in this case -- for mental and emotional anguish and distress and loss of enjoyment of life -- are not susceptible to class treatment. See Rutstein, 211 F.3d at 1240 ("[E]ach plaintiff's damage will be dependent on what kind of discrimination plaintiff was subject to, and what harm resulted.")

Accordingly, plaintiffs' motion for class certification is denied.

**CONCLUSION**

Based on a review of the file, record, and proceedings herein, and for the reasons discussed, the court concludes that plaintiff has failed to satisfy the requirements of Fed. R. Civ. P. 23. Therefore, **IT IS HEREBY ORDERED** that:

1. Plaintiffs' motion to strike the affidavit of Brian Homme [Doc. No. 26] is denied.

2. Plaintiffs' motion for class certification [Doc. No. 16] is denied.

Dated: March 26 2001

David S. Doty, Judge
United States District Court